UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARTIN CANO                                          CIVIL ACTION

VERSUS                                               NO: 12-2328

DEUTSCHE BANK NATIONAL TRUST                         SECTION: "A" (2)
CO., ET AL.

## ORDER

      The following motions are before the Court: **Motion to Dismiss (Rec. Doc. 29)** filed by defendant Carrington Mortgage Services, LLC and Deutsche Bank National Trust Co., as Indenture Trustee for New Century Home Equity Loan Trust 2005-3; **Motion to Dismiss (Rec. Doc. 36)** filed by defendant Shapiro & Daigrepont, LLC; **Motion for Default Judgment  (Rec. Doc. 68)** filed by plaintiff Martin Cano. The motions are before the Court on the briefs without oral argument.

I.      **BACKGROUND**

      Plaintiff Martin Cano filed this lawsuit against defendants Carrington Mortgage Services, LLC, Deutsche Bank National Trust Co., as Indenture Trustee for New Century Home Equity Loan Trust 2005-3, Shapiro & Daigrepont, LLC, New Century Mortgage Securities, LLC, and Downs Financial, Inc., to recover for damages that he claims to have sustained in conjunction with foreclosure proceedings against rental property located in New Orleans, Louisiana. On April 25, 2005, Cano executed a promissory note and mortgage payable to the order of Downs Financial, Inc. (Rec. Doc.36-2, Exh. A-A). Sometime thereafter the note and mortgage were transferred to a trust with Deutsche serving as trustee. Carrington serviced the loan for Deutsche.

      The law firm of Shapiro & Daigrepont, LLC ("Shapiro") was retained to initiate foreclosure proceedings against Cano's property because Cano had not made a payment on

the loan in excess of two years. On July 27, 2010, Shapiro notified Cano of the imminent foreclosure, and on December 17, 2010, Shapiro filed a petition for executory process in Orleans Parish on behalf of Deutsche, as trustee.[1] The property was scheduled to be adjudicated at a sheriff's sale on April 7, 2011. On the morning of the sale Cano *pro se* contacted the Orleans Parish Sheriff's Office via a fax that said "[p]lease cancel todays [sic] sale due to bankruptcy 13 filing." (Rec. Doc. 36-3, Exh. B). That same day Cano also faxed to the district court a notice of intent to file bankruptcy and petition for an injunction to stay the sale. (*Id.*). The district judge denied the petition as moot because the sheriff had already unilaterally cancelled the sale based on Cano's ex parte fax. (Rec. Doc. 36-5, Exh. D). In truth, Cano had not filed for bankruptcy. Shapiro and Deutsche contend that Cano misrepresented his bankruptcy status in order to stall the foreclosure proceedings.

On June 22, 2011, Cano *pro se* filed with the district court a "Notice of Invalid Successor Trustee Sale" and "Notice to Cease and Desist." (Rec. Doc. 36-6, Exh. E). The crux of these documents was Cano's contention that Deutsche lacked standing to foreclose on the mortgage because certain irregularities existed in the allonges that evinced the various transfers of the indebtedness/mortgage. Cano's position was that the original indebtedness had been satisfied—not because he had repaid the loan—but because the indebtedness to the original lender had been satisfied by the securitization of the note and/or efforts by the trustee to keep the loan current for the benefit of the trust. Cano accused Defendants of perpetrating a fraudulent conveyance scheme by trying to foreclose on the property securing

---

[1]   Executory process is essentially an expedited form of in rem action. *Mitchell v. Valteau*, 30 So. 3d 1108, 1112 (La. App. 4th Cir. 2010) (*citing Hood Motor Co. v. Lawrence*, 320 So. 2d 111, 112-13 (La. 1975)). Executory process is "used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment." *Id.* (*quoting* La. Code Civ. Pro. art. 2631).

the note.[2] Apparently the district court was not moved by Cano's impassioned contentions of lender fraud because the court denied Cano's request for an injunction, (Rec. Doc. 36-9, Exh. H), and the property was seized and sold at auction on September 22, 2011.[3] Cano did not seek a suspensive appeal in state court.[4]

Cano filed the instant federal complaint on September 21, 2012, asserting federal claims under the Fair Debt Collection Practices Act ("FDCPA") and the Real Estate Settlement Procedures Act ("RESPA"). Cano also alleges state law claims of fraud, unjust enrichment, and violations of the Louisiana Unfair Trade Practices Act ("LUTPA").

Shapiro, Deutsch, and Carrington now move to dismiss the complaint in its entirety, relying on various defenses. Defendants contend that this lawsuit is nothing but a new iteration in Cano's crusade to challenge the state court foreclosure proceeding. As such, Defendants argue that the claims in this lawsuit are "inextricably intertwined" with the state court foreclosure proceeding and are therefore barred by the *Rooker-Feldman* doctrine.

---

[2] Carrington, the loan servicer, later characterized Cano's tactics as being part of a "mortgage elimination scheme,"(Rec. Doc. 22-7, Exh. G), a scheme where the borrower, who is typically in default, attempts to resist payment on the indebtedness and foreclosure by pointing to various contrived technical deficiencies in the loan documentation.

[3] Cano could have arrested the seizure and sale of the property by injunction pursuant to article 2751 of the Louisiana Code of Civil Procedure if the debt had in fact been extinguished or was legally unenforceable—the very contentions that he makes in this lawsuit. In fact, based on Cano's allegations he might have obtained a preliminary injunction halting the seizure and sale without having to post security. La. Code Civ. Pro. arts. 2752 & 2753. Cano *pro se* filed a motion to cancel the sale in which he laid out all of the same contentions that he makes in this Court, (Rec. Doc. 36-8, Exh. F), but the state district judge found that Cano did not satisfy the grounds for injunctive relief and that he had not adhered to the procedure required for obtaining such an injunction. (Rec. Doc. 36-9, Exh. H).

[4] Louisiana Code of Civil Procedure article 2642 provides the mechanism to take a suspensive appeal from an order directing the issuance of a writ of seizure and sale. Further, article 2004(A) allows for annulment of a judgment obtained by fraud or ill practices. Cano availed himself of neither of these remedies. Therefore, the state court's order to seize and sell the property is now a final judgment for res judicata purposes. *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 380 n.1 (5th Cir. 2013) (*citing Countrywide Home Loans Serv., LP v. Thomas*, 113 So. 3d 355, 359-60 (La. App. 4th Cir. 2013)).

3

Defendants also contend that several of Cano's causes of action are prescribed. Cano responds *inter alia* that the nature of the executory proceedings in state court limited him to procedural defenses and precluded him from bringing the claims that he asserts in the instant lawsuit.

## II.   DISCUSSION

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (*citing Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (*quoting Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (*quoting Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (*quoting Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Legal conclusions must be supported by factual allegations. *Id.* (*quoting Iqbal*, 129 S. Ct. at 1950).

### *Rooker-Feldman Doctrine*

Because the *Rooker-Feldman* doctrine touches upon the jurisdiction of the Court to

4

adjudicate this matter, the Court considers it first. *See Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011).

The *Rooker-Feldman* doctrine is grounded on the premise that federal district courts do not have appellate jurisdiction over state court decisions. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (*citing Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). To the extent that such appellate jurisdiction exists at all in the federal system, it is vested in the United States Supreme Court. *Id.* Pursuant to the *Rooker-Feldman* doctrine, district courts lack subject matter jurisdiction to entertain complaints by "state-court losers" who seek to have a federal district court review or reject a state court judgment that the plaintiff believes has injured him. *Id.* In essence, the doctrine prevents a federal district court from entertaining a collateral attack on a state court judgment. *Weaver*, 660 F.3d at 904 (*quoting Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). A state court judgment is attacked for purposes of *Rooker-Feldman* when the federal claims being asserted in the subsequent lawsuit are "inextricably intertwined" with a challenged state court judgment. *Id.* (*quoting Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 350 (5th Cir. 2003)).

In support of their *Rooker-Feldman* argument the defendant-movers point out that if the foreclosure judgment was properly obtained, then Cano would have no claim for the damages that he seeks in this suit—damages that allegedly arise out of actions taken during the foreclosure proceedings and the validity of the documents offered in state court. Defendants argue that this Court cannot grant relief in Cano's favor except by reviewing the state court judgment and the authentic evidence and the procedure leading to the foreclosure judgment. According to Defendants, a finding in Cano's favor in this lawsuit would require this Court to determine that the state court should not have authorized the underlying foreclosure. Defendants characterize Cano's complaint as a clear attack on the validity of the

5

foreclosure proceedings, and they contend that any additional claims that Cano alleges are "inextricably intertwined" with the foreclosure judgment, thereby depriving this Court of jurisdiction under *Rooker-Feldman*.

After Defendants filed their motions to dismiss the Fifth Circuit released *Truong v. Bank of America, N.A.*, 717 F.3d 377 (5th Cir. 2013), a case which undisputedly demonstrates that Defendants' reliance on the *Rooker-Feldman* doctrine is misplaced. In *Truong* the plaintiff brought suit against two banks following a final foreclosure judgment in a Louisiana state court. The trustee bank had moved for foreclosure via executory process after Truong defaulted on her loan. After the property was seized and sold at auction, Truong filed suit against the banks in federal court alleging that the defendants' conduct in conjunction with the foreclosure proceedings had violated the LUTPA and other state law. Like Cano, Truong attempted to challenge the trustee bank's standing to foreclose and the validity of certain documents offered in support of the foreclosure petition. Truong even sought a declaration that the state court foreclosure had been inappropriate because the bank had failed to include all of the necessary evidence required under Louisiana law. *Truong*, 717 F.3d at 380-81.

The defendants in *Truong* moved to dismiss the complaint arguing that the plaintiff's federal complaint was actually a collateral attack on the state court foreclosure proceedings, and that under the *Rooker-Feldman* doctrine the court lacked subject matter jurisdiction to pass judgment on the validity of the state court's foreclosure order. Rejecting arguments strikingly similar to those asserted by Defendants herein, the Fifth Circuit disagreed and held that because Truong was not seeking relief in the form of reversing or voiding the state court judgment, *Rooker-Feldman* did not apply. *Truong*, 717 F.3d at 384. Recognizing that the state court had implicitly found the evidence before it to be authentic, *id.* at 380, the Fifth Circuit nonetheless concluded that Truong's claims that the bank had misled the state court about the authentic nature of the evidence were sufficiently independent of the foreclosure

judgment itself so as not to deprive the district court of subject matter jurisdiction. *Id.* at 383.

Perhaps the most notable aspect of the *Truong* decision was the appellate court's recognition of the actual narrowness of the *Rooker-Feldman* doctrine, 717 F.3d at 382, and the court's observation that federal courts had been enlarging the "inextricably intertwined" aspect of *Rooker-Feldman* far beyond the core holding of either *Rooker* or *Feldman. Id.* at 385. The court clarified that the doctrine does not prevent a federal court from adjudicating an independent claim even if it requires the federal court to deny a legal conclusion that was reached by the state court. *Id.* at 382 (*citing Exxon Mobil*, 544 U.S. at 284). The key is the *independent* nature of the claim. *Id.* at 383. The court counseled that the two salient aspects of any *Rooker-Feldman* analysis will be 1) a determination of exactly what the federal court is being asked to review and to do, and 2) an identification of the specific source of the plaintiff's injury. *Id.* at 382. Oftentimes principles of state-law preclusion will come into play to preclude subsequent claims arising out of the state court proceedings. *Id.* at 382, 382 n.7, 387-88. But *Rooker-Feldman* does not turn issues about the preclusive effects of judgments into matters of federal subject matter jurisdiction. *Id.* at 384 (*quoting Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 569 F.3d 667, 671 (7th Cir. 2009) (Easterbrook, C.J.)).

Turning now to Cano's federal complaint, the Court first notes that Cano is not seeking to have this Court reverse the state court judgment or to void the sale of his property—relief that would immediately signal a *Rooker-Feldman* problem. *See, e.g., Morris v. Am. Home Mortg. Serv., Inc.*, 443 Fed. Appx. 22, 24 (5th Cir. 2011) (unpublished) (applying *Rooker-Feldman* where the only relief sought was setting aside of the state court foreclosure order). Cano concedes that he cannot regain the property via any judgment that this Court would render because *Rooker-Feldman* aside, no defendant in this suit owns the property. Thus, Cano seeks only damages.

Cano's damages claims are based primarily on affirmative relief sought for violations

of the FDCPA, RESPA, and the LUTPA. Cano complains that various conduct by Defendants, much of which occurred before the foreclosure petition had even been filed, violated the FDCPA, RESPA, and the LUTPA. The crux of Cano's complaint is that the Defendants conspired in a fraudulent scheme regarding Deutsche's status as the party with standing to foreclose, and that as part of their scheme they submitted forged documents in the foreclosure proceeding in order to obtain an order to seize and sell the property. Adjudicating these claims does not require this Court to review the state court judgment, except perhaps as to the validity of the evidence submitted in that proceeding, which is a legal conclusion that *Rooker-Feldman* does not deprive this Court of jurisdiction to review. *Truong*, 717 F.3d at 382. Affirmative damage relief in Cano's favor will not require this Court to alter the state court decision, even if it does require this Court to enter findings that are inconsistent with findings implicit in the state court's order, a situation that *Truong* demonstrates is not problematic under *Rooker-Feldman*. And just as in *Truong*, the source of Cano's injury is not the foreclosure judgment itself but rather Defendants' actions in obtaining the foreclosure. *Id.* at 383. As in *Truong*, Cano's claims are independent claims over which this Court has subject matter jurisdiction. Defendants' motions to dismiss are DENIED insofar as they challenge subject matter jurisdiction on *Rooker-Feldman* grounds.[5]

### FDCPA Claims

The purpose of the FDCPA is to protect consumers against abusive debt collection practices by debt collectors. 15 U.S.C.A. § 1692(e) (West 2009). A FDCPA claim must be brought within one (1) year of when the alleged violation occurred. 15 U.S.C.A. § 1692k(d)

---

[5] *Truong* demonstrates that Cano's biggest hurdle would likely be issue/and or claim preclusion. Even before *Truong* was released, this Court was persuaded that Defendants' arguments sounded more in preclusion than in subject matter jurisdiction. Yet preclusion was raised for the first time by Shapiro in its reply memorandum, (Rec. Doc. 65. at 3-5), which was not proper.

(West 2009).

Cano filed his federal complaint on September 21, 2012. Cano's FDCPA claims related to the July 27, 2010 and September 24, 2010 letters from Shapiro, and the October 8, 2010 letter from Carrington are clearly prescribed.

The sole piece of correspondence that is not subject to prescription is the December 21, 2011 letter from Carrington. (Rec. Doc. 22-7). Cano believes that this letter violates 15 U.S.C. § 1692e(7) which prohibits a debt collector from using a "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer," and 15 U.S.C. 1692(5) regarding "threat[s] to take legal action that cannot legally be taken or that is not intended to be taken."

Cano fails to state a claim under the FDCPA arising out of the December 21, 2011 letter. This letter was not sent in conjunction with any defendant's effort to collect a debt.[6] The foreclosure proceedings were concluded by several months when this letter was sent, and Cano's property had already been sold at auction on September 22, 2011. The letter was obviously sent to Cano in response to something that he had sent to Carrington or one of the defendants. The Court is persuaded that the letter is not actionable as a violation of the FDCPA.

Aside from the letters mentioned above, Cano alleges that Defendants violated the FDCPA by submitting fraudulent evidence to him misrepresenting the character, amount, and legal status of the debt in question in violation of 15 U.S.C. § 1692e(2)(A). (Rec. Doc. 22, First Supplemental and Amending Complaint at ¶ 6). This allegation concerns Cano's contention that the note was never really in default because of the trust, and Deutsche's lack of standing to foreclose. Cano alleges that this same conduct violated 15 U.S.C. § 1692e(5),

---

[6] Neither the complaint nor the record suggests that Cano was being pursued for a deficiency judgment at the time that the letter was sent.

which precludes a debt collector from threatening legal action that it cannot take, again because Deutsche lacked standing to foreclose. Cano pleads that the alleged fraudulent scheme that Defendants engaged in to seize his property without right violated numerous provisions of the FDCPA.

Insofar as Cano relies on the foregoing alleged conduct to support his FDCPA causes of action, all of those claims are prescribed. Under federal law a cause of action begins to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) (*citing Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)). Thus, the statute of limitations begins to run when the plaintiff is in possession of the "critical facts that he has been hurt and who has inflicted the injury." *Id.* All of Cano's FDCPA claims, regardless of the specific statutory prohibition at issue, arise out of the allegedly fraudulent scheme that he believes Defendants engaged in to foreclose on his property without legal right. The record unequivocally demonstrates that Cano was aware of the facts giving rise to these claims no later than June 22, 2011, when he executed the "Notice of Invalid Successor Trustee Sale" that he filed in the state court foreclosure proceeding. (Rec. Doc. 36-6, Exh. E). Cano even submitted evidence to the state court in support of his allegations in the form of an affidavit from a private investigator. (Rec. Doc. 22-4). That affidavit is dated July 18, 2011. Again, the record demonstrates that Cano was well aware of his injury and the facts underlying his claim more than a year before he filed his federal complaint on September 22, 2012.

Cano did file suit within one year of the sale of the property and he cites this fact in support of his contention that his claims are not prescribed. But the actual sale of the property is not the event that gave rise to the FDCPA claims. The FDCPA claims are grounded on Defendants' conduct in collecting the debt and foreclosing on the property. Again, as explained above, Cano was clearly aware of the facts giving rise to his FDCPA

claims more than a year before he filed his complaint.

The motions to dismiss are GRANTED as to the FDCPA claims.

### RESPA Claims

Congress enacted RESPA to effect changes in the settlement process for residential real estate. 12 U.S.C.A. § 2601(b) (West 2001). The Court assumes that Cano's RESPA claims are brought pursuant to 12 U.S.C. § 2605(e).[7] Section 2605(e), which is governed by a three year statute of limitations, pertains to the duty of a loan *servicer* to respond to borrower inquires. The allegations regarding RESPA violations are primarily directed at Carrington, the undisputed loan servicer. Cano alleges that Carrington failed to properly respond to certain qualified written requests, and to provide him with the custodial and/or master file for his mortgage when requested. (Rec. Doc. 22, First Supplemental and Amending Complaint at ¶¶ 14, 15). Carrington is also accused of charging fees to respond to qualified written requests and calling itself the loan servicer at times when another entity was actually the servicer of record. (*Id.* ¶¶ 32, 33).

Shapiro argues that it cannot be liable under § 2605(e) because it was not the loan servicer. Shapiro was the law firm that initiated foreclosure proceedings on behalf of its client. Shapiro's motion to dismiss is GRANTED as to the RESPA claims.

Deutsche was the party that initiated foreclosure proceedings in state court as trustee for the trust holding the note . Nothing suggests that Deutsche was the loan servicer. Deutche's motion to dismiss is GRANTED as to the RESPA claims.

_____

[7]  Cano does not name the specific statutory sections of RESPA that he relies upon and his opposition memoranda offer little help in expounding upon his RESPA claims. In his memorandum in opposition to the Deutsche/Carrington motion to dismiss, Cano does mention § 2605(e) and he refers to the three year statute of limitations, which is another indicator of his intent to sue under § 2605(e). Cano makes additional references to RESPA in ¶¶ 19 and 29 of his complaint but again he cites no specific statutory provisions, and the Court is at a loss as to what aspect of RESPA Cano believes is being violated by the conduct recited in those paragraphs. Section 2605(e) does not seem to encompass the conduct recited in ¶¶ 19 and 29.

Carrington was the loan servicer. The arguments that Carrington makes regarding the sufficiency of its responses are merits-based issues that are not appropriate for a Rule 12(b)(6) motion. Carrington's motion to dismiss is DENIED as to the RESPA claims.

### LUTPA Claims

Defendants argue that Cano's claims under the LUTPA are prescribed. Claims under the LUTPA are subject to a one year prescriptive period. La. Rev. Stat. Ann. § 51:1409(E) (West Supp. 2013). Cano filed this lawsuit on September 21, 2012. Cano's LUTPA cause of action is grounded on his contention regarding Deutche's lack of standing to foreclose in light of defects in the transfer documents and issues related to the trust. Cano was aware of the facts that underlie his LUTPA claims no later than June 22, 2011, when he executed the "Notice of Invalid Successor Trustee Sale" that he filed in the state court foreclosure proceeding. (Rec. Doc. 36-6, Exh. E). Because Cano filed suit more than one year after his LUTPA cause of action accrued, his claims are prescribed. Cano's contention that a continuing violation occurred is conclusory and lacks merit. The motions to dismiss are GRANTED as to the LUTPA claims.

### Miscellaneous State Law Claims

Assuming that Cano had intended to plead a state law fraud claim, Defendants' correctly contend that this claim has not been pleaded with particularity.[8] *See* Fed. R. Civ. Pro. 9(b).

Cano's unjust enrichment claim is asserted against Deutsche. Cano alleges that Deutsche was unjustly enriched by the foreclosure because it sold his property and also recovered under its insurance. (Rec. Doc. 22, First Supplemental and Amending Complaint at

---

[8] Moreover, claims based on allegations of fraud and misrepresentation are also subject to a one year prescriptive period. *Simmons v. Templeton*, 723 So. 3d 1009, 1012 (La. App. 4th Cir. 1998).

12

¶¶ 17 & 35). Deutsche argues that Cano cannot state a claim for unjust enrichment because one of the elements of the cause of action is that there be no other remedy at law available to the plaintiff.[9]

Cano does not state a claim for unjust enrichment under Louisiana law. Cano has not alleged that he is without no other remedy at law and he cannot make such an allegation. Aside from the remedies that were available to him in state court, *see* notes 3 & 4, *supra*, Cano has sued under three other statutory schemes to recover for his impoverishment. *See Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoor, LLC*, 111 So. 3d 1099, 1105-06 (La. App. 4th Cir. 2013). An unjust enrichment claim is only applicable to fill a gap in the law where no express remedy is provided. *Ames v. Ohle*, 97 So. 3d 386, 392 (La. App. 4th Cir. 2012) (*citing Dugas v. Thompson*, 71 So. 3d 1059, 1068 (La. App. 4th Cir. 2011)). Cano does not state a claim for unjust enrichment and Deutsche's motion is GRANTED as to this claim.

### *Motion for Default Judgment*

Cano moves for entry of a default judgment against Down's Financial. A party is not entitled to a default judgment as a matter of right. *Williams v. Liberty Mut. Ins. Co.*, 2005 WL 776170, at *3 (5th Cir. Apr. 7, 2005) (unpublished) (*citing Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996); *Mason Lister*, 562 F.2d 343, 345 (5th Cir. 1977)). The entry of a default judgment is committed to the sound discretion of the court. *Id.*

Down's Financial was the original lender. The complaint contains no allegations whatsoever with respect to Downs Financial. The motion for a default judgment against this defendant is DENIED.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 29)** filed by defendant

---

[9] "The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298.

Carrington Mortgage Services, LLC and Deutsche Bank National Trust Co., as Indenture Trustee for New Century Home Equity Loan Trust 2005-3 is **GRANTED IN PART AND DENIED IN PART**. The motion is **DENIED** as to the RESPA claims against Carrington and **GRANTED** in all other respects;

      **IT IS FURTHER ORDERED** that the **Motion to Dismiss (Rec. Doc. 36)** filed by defendant Shapiro & Daigrepont, LLC is **GRANTED**;

      **IT IS FURTHER ORDERED** that the **Motion for Default Judgment (Rec. Doc. 68)** filed by plaintiff Martin Cano is **DENIED**.

      July 29, 2013

_____

JAY C. ZAINEY

UNITED STATES DISTRICT JUDGE